In the ESTATE OF Ethel Eula FERGUSON, Phillip Baird, Carolyn Salls, Douglas Baird, III, Ola Maureen Davis, Ivan Taylor and the Estate of Lois Meacham, Appellants.

v.

Roger CONKLIN, Personal Representative, Respondent.

No. WD 37534.

Missouri Court of Appeals, Western District.

Oct. 28, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 1986.

Application to Transfer Denied Feb. 17, 1987.

---

Robert C. Smith, William Jay Powell, Smith, Lewis & Beckett, Columbia, for appellants.

Joe D. Holt, Fulton, for Roger Conklin.

Before SHANGLER, P.J., and DIXON and LOWENSTEIN, JJ.

SHANGLER, Presiding Judge.

Ethel Eula Ferguson died intestate, a widow, without issue, and survived only by collateral heirs of the full blood descended from her maternal grandparents and by collateral heirs of the half blood descended from her paternal grandfather and his third wife—a person not the grandmother of Ethel Eula Ferguson. The administrator of the estate of the intestate brought a Petition for Determination of Heirship in the probate division of the circuit court. The court entered a decree of heirship from which the relatives of the whole blood appeal.

On the proceeding in the probate division to determine heirship, the family tree was received by agreement and the relationship of these persons to the decedent was stipulated as fact. The collateral heirs of the whole blood who survived Ethel Eula Ferguson were four second cousins, and Spencer Roberts, another second cousin,[1] and two third cousins [children of another second cousin who predeceased the intestate Ferguson].[2] The half blood kindred who survived Ethel Eula Ferguson were four first cousins, twenty-one second cousins, and five third cousins [who were descendants of deceased first and second cousins of the half blood]. A total of fifteen half blood cousins were either alive or had descendants alive at the time Ethel

---

1. The heirs of the whole blood all join as appellants, except for Spencer Roberts who pursued a separate appeal—subsequently dismissed.

2. Lois Meachem, another heir of the full blood appellant, has since died and the executor of her estate was substituted as party.

Eula Ferguson died. The probate division, conformably with the design of inheritance tendered by the petition, determined that the surviving first cousins [of the half blood] was that level of kinship most consanguineous to the intestate Ethel Eula Ferguson, and hence was that class among whom apportionment was to be calculated in equal parts. There were, as the family tree disclosed, seventeen such descendants—*fifteen* of the half blood and *two* of the full blood. The probate division then gave effect to the provision of § 474.040, RSMo 1978 that where the inheritance passes to the collateral kindred of the intestate "those of the half blood shall inherit only half as much as those of the whole blood," by an order that divided the inheritance onto nineteen fractions and then allocated one-nineteenth to each half blood and two-nineteenths to each full blood. That is, the determination of heirship divided the inheritance in seventeen equal parts [the total number of first cousin descendants], and then doubled the parts taken by each of the whole bloods. In those terms, the full bloods received a total of *four-nineteenths* of the Ferguson estate and the half bloods, a total of fifteen-nineteenths of that inheritance.

The full bloods appeal that order of determination. They argue that the § 474.-040 directs that the whole bloods *as a class* take twice as much as the half bloods *as a class*, so that the allocation of the estate in the proportion of two-thirds to the whole bloods and one-third to the half bloods must antecede any shares to individuals within the class. The probate division, rather, understood the statute to mandate that *each individual* whole blood—rather than the class itself—take twice as much as each individual half blood, and framed the heirship accordingly. The whole bloods argue also that § 474.020 as well as § 474.-040 appertain to the treatment of half blood relatives in intestate succession, and thus understood *in pari materia*, compel the sense that the full bloods are intended

to take as a class doubly weighted against the half bloods as a class.

The full bloods come to the posture that heirs of the whole blood *as a class* inherit twice as much as heirs of the half blood *as a class* not only from the integral sense of § 474.040 and 474.020, but also by rules of grammar. They cite [as stressed] the text of § 474.040: *Collaterals of half blood inherit, how:*

> When the inheritance is directed to pass to the ascending and collateral kindred of the intestate, if *part* of the collaterals *is* of the whole blood of the intestate, and the other *part* of the half blood only, *those* of the half blood shall inherit only half as much as *those* of the whole blood; but if all collaterals are of the half blood, they shall have whole portions, only giving to the ascendants double portions.[3] [emphasis added]

They cite also [as stressed] the text of § 474.020: *Lineals take per capita and per stirpes, when:*

> When several lineal *descendants, all of equal degree of consanguinity to the intestate,* or his father, mother, brothers and sisters, or his grandfathers, grandmothers, uncles and aunts, or any ancestor living and their children, come into partition, they *shall take per capita, that is by persons;* where a part of them are dead, and part living, and the issue of those dead have a right to partition, such issue shall take per stirpes; that is, the share of the deceased parent. [emphasis added]

The whole bloods argue that the use of the collective pronoun *those* in combination with the singular noun *part* and the singular verb *is* "suggests a legislative intent to make the division between two groups ['parts'], the whole blood relatives and the half blood relatives." This grammatical synthesis of § 474.040, they say, is reinforced by the provision of § 474.020, that only when "several lineal descendants, *all*

---

**3.** The whole blood appellants observe, quite correctly, that only that portion of the section which precedes the semicolon applies to a case such as this where both whole bloods and half bloods inherit.

*of equal degree of consanguinity to the intestate"* come into partition of the estate do they take per capita, that is, by persons. Thus [the whole bloods continue in argument], since *degree of consanguinity* "imports a measure of the common blood shared by related persons," none of the half blood branch of the Ferguson heirs can share an equal degree of joint blood as do the heirs of the whole blood. Therefore [the syllogism concludes], unless the initial division of the estate is rendered into two parts, the heirs of the whole blood and the heirs of the half blood, "one cannot find a generation of heirs in which division can be made among persons of an equal degree of consanguinity as is required by section 474.020."

We avert for the moment the response to construction of § 474.040 by syntactics and the *in pari materia* interrelationship the whole bloods attribute between § 474.040 and § 474.020 to address the assertion indispensable to the construct of the whole blood claim to a double part of the entire estate *before* distribution to the individuals of that part: that unless that division is rendered at outset, "one cannot find a generation of heirs in which division can be made among persons of an equal degree of consanguinity as is required by section 474.020." The argument that there can be no partition of the estate *by the person* among the Ferguson heirs because relatives of the whole blood and of the half blood do not share a common degree of consanguinity not only rests on a false

premise, but also neglects another statute, also *in pari materia* and relevant—§ 474.-010. The whole blood syllogism mistakenly assumes that *consanguinity* imports whole blood contradistinct from half blood connotations, and so insinuates into § 474.020 a distinction the text does not yield.

The whole bloods acknowledge that § 474.010 [4] defines the manner in which the property of an intestate decedent descends and is distributed, and that subsection 2(c) operates to identify the whole bloods and half bloods delineated as the Ferguson heirs entitled to share the estate. They argue, however, that § 474.010 serves only to define degree of kinship, not degree of consanguinity, and hence does not address a contention of descent and distribution based on blood relationship. It is only by resort to §§ 474.020 and 474.040, the whole bloods argue, that the dispute can be resolved. The civil law degree of kinship computation subsection 2(d) adopts, the whole bloods argue, "merely provides a method of calculating relationships according to an arbitrary formula, while 'degree of consanguinity' imports a measure of the common blood shared by related persons." The whole bloods resort to the Latin derivation of *consanguinity*—"of joint blood" —and one of the definitions rendered for the term in Black's Law Dictionary— "blood relationship"—to extrapolate the theorem that whole bloods and half bloods cannot share an equal degree of consanguinity within the sense of § 474.020 be-

---

**4.** 474.010. General rules of descent

All property as to which any decedent dies intestate shall descent and be distributed, subject to the payment of claims, as follows:

. . . .

(2) The part not distributable to the surviving spouse, or the entire intestate property if there is no surviving spouse, shall descend and be distributed as follows:

. . . .

(c) If there are no children, or their descendants, father, mother, brother or sister, or their descendants, then to the grandfathers, grandmothers, uncles and aunts and their descendants in equal parts;

(d) If there are no children or their descendants, father, mother, brother, sister, or their descendants, grandfather, grandmother, uncles,

aunts, nor their descendants, then to the great-grandfathers, great-grandmothers, and their descendants, in equal parts and so on, in other cases without end, passing to the nearest lineal ancestors and their children, and their descendants, in equal parts; provided, however, that collateral relatives, that is relatives who are neither ancestors nor descendants of the decedent, may not inherit unless they are related to the decedent at least as closely as the ninth degree, the degree of kinship being computed according to the rules of the civil law; that is, by counting upward from the decedent to the nearest common ancestor, and then downward to the relative, the degree of kinship being the sum of these two counts, so that brothers are related in the second degree; . . . .

cause they are not of equal blood relationship.

▆ That argues etymology rather than legal meaning. *Consanguinity,* as used in our decisions, and indeed as generally understood in the legal community,[5] distinguishes relatives by blood from relatives by affinity. *See McComb v. Lyons,* 487 S.W.2d 16, 18 (Mo.1972). *Degree of consanguinity* is used interchangeably with *degree of kinship* to mean, simply, the degree of relation of blood relatives. *Graves v. Hyer,* 626 S.W.2d 661, 667 (Mo. App.1981); *Matter of Simonin,* 637 S.W.2d 783, 784 (Mo.App.1982); Black's Law Dictionary, p. 275. "The word 'kindred,' in its primary legal acceptance, means 'relatives by blood,'" our supreme court declared in *Hockaday v. Lynn,* 200 Mo. 456, 98 S.W. 585, 587 (1906). The *degree of kinship* in the collateral line, under the rules of the civil law expressly adopted by § 474.010, is computed from the intestate upward "to the nearest common ancesto *r* " and then downward to the person whose relationship is sought—"the degree of kinship being the sum of these two counts." Subsection 2(d), § 474.010 [emphasis added]; *State v. Thomas,* 351 Mo. 804, 174 S.W.2d 337, 340 (1943). The *degree of kinship* [and thus, *degree of consanguinity* ], therefore, is determined by a count back to the common ancesto *r,* not ancestor *s.* The argument the whole bloods make: that they count two ancestors in common with the intestate Ferguson, whereas the half bloods count only one—and so are closer in the blood relation to the intestate—therefore, is irrelevant *both* as to the determination of the generation which establishes the class for inheritance under § 474.010, and as to the distribution of the inheritance among that class under § 474.020.

We revert to the argument by syntax and construction, that the sentence structure of half blood § 474.040, reinforced by the "equal degree of consanguinity" component of § 474.020—*in pari materia*—directs that the whole bloods *as a class* take twice as much as the half bloods *as a class.* Our determination that a generation of lineal descendants, although mixed as to the whole blood and the half blood, are of equal consanguinity to the intestate so that those alive among them take *per capita* under § 474.020, depletes the *in pari materia* premise of that argument. What remains is the appeal to syntax.

The relevant portion of the section [§ 474.040] reads:

> When the inheritance is directed to pass to the ascending and collateral kindred of the intestate, if part of the collaterals is of the whole blood of the intestate, and the other part of the half blood only, *those* of the half blood shall inherit only half as much as those of the whole blood.... [emphasis added]

The grammatical function of *those* determines the sense intended for that component of the statute. The whole bloods, as we note, insist that *those* refers to the whole bloods and the half bloods as collective groups because its antecedent is the collective noun *part* with its predicate the singular verb *is.* It is so, as the whole bloods argue, that the form of the verb used indicates whether the writer [here, the legislator] intends a collective noun to refer to the collective unit [by a singular verb] or to individual parts of that collective [by a plural verb]. Warriner's English Grammar and Composition, Rule 6k, at 95 (rev. ed. 1965). Thus, conclude the whole bloods, the subsequent clause—"*those* of the half blood shall inherit only half as much as *those* of the whole blood"—refers to collective groups, not individuals of the groups, so that the whole bloods as a group inherit twice as much as do the half bloods as a group. *Those,* however, is a plural pronoun, the subject of a separate independent clause. In context, *those,* a plural pronoun, refers back to *part,* a collective noun. That usage usually indicates that the writ-

**5.** Black's Law Dictionary (rev. 5th ed. 1979 at 275), *Consanguinity.* Kinship; blood relationship; the connection or relation of persons descended from the same stock or common ances-

to *r.* Consanguinity is distinguished from "affinity," which is the connection existing in consequence of a marriage, between each of the married persons and the kindred of the other.

er intends the noun to signify a "plural" group of individuals rather than a "singular" unit or class. *Id.,* rule 6s at 100. Thus, the very usage the whole bloods invoke from one part of the statutory sentence to give color to their argument from syntax inverts in the subsequent part of the same sentence to dispel that color.

The method used by the probate division of the circuit court to partition the shares among the whole bloods and the half bloods generation found to be the nearest lineal descendants of the intestate Ferguson under § 474.010 was that employed by our supreme court in *Vreeland v. Vreeland,* 296 S.W.2d 55 (Mo.1956). Vreeland died intestate, survived by a full brother, a half brother, and a son of an adoptive sister of the intestate decedent. At issue was the right of the son of the adopted sister to share in the partition of the estate of the intestate. The concern of the decision, was [at 57]: "[C]an an adopted person inherit from his collateral kin?" The court did not study the grammar of the statute, nor was that inquiry invited. The court determined that an adopted child had the same status as a natural child under the statute, and then decreed that the full blood brother take one-half of the estate, while the half brother and the adoptive child [who took the share of the deceased mother] each take one-fourth of the estate. This solution applies the half blood statute [then § 468.040] in the manner the probate division of the circuit court applied § 474.-040 to the collateral heirs of the intestate decedent Ferguson. The whole bloods here argue that *Vreeland* renders dictum, and otherwise does not bind as precedent on the construction of the statute by grammar. It may be that a declaration in the opinion extraneous to the issues, not presented by any brief or argument, and not otherwise essential to the decision is dictum and lacks the force of adjudication. *See* cases in West's Missouri Digest 2d, Courts, key 92 (1984). On the other hand, no Missouri authority with occasion to apply § 474.040 either recommends or adopts the method of distribution the whole bloods advocate. The argument from grammar the whole bloods urge, moreover, is vague, forced, and too inconclusive a ground to declare as the legislative intent with any confidence.

The recorded Missouri authorities with occasion to comment on the half blood statute have understood as self-evident [as did *Vreeland*] that § 474.040 prescribes that the *individual* collateral kindred of the whole blood inherit twice as much as the *individual* collateral kindred of the half blood. That is the dictum of *First Trust Co. v. Myers,* 351 Mo. 899, 174 S.W.2d 378, 387 (banc 1943). That is also the scheme Maus discerns the statute intends in the authoritative *Missouri Practice,* 4 Maus, Missouri Practice § 1232 (1960). That work comments on the operation of § 474.-040:

> A convenient method of determining the share of collaterals of the half blood when no ascendants are involved is to double the number of collaterals of the whole blood and add the result to the number of collaterals of the half blood. The resulting figure will be the denominator of the fractional share to which each of the half bloods are entitled. Those of the whole bloods will be entitled to twice that amount. For example, if the intestate left two brothers of the whole blood and two brothers of the half blood the proper division would be six. Each of the half bloods shall receive a one sixth share while each of the whole bloods would receive a two sixths share.

That is the method used by the probate division of the circuit court to partition the inheritance among the collateral kindred of the intestate decedent Ferguson.

That method not only functions easily and well, but also most logically works out the relationship among the statutes *in pari materia:* §§ 474.010, 474.020 and 474.040. Section 474.010 directs that the generation of kin entitled to inherit is found by the civil law formula, and under that statute, that generation of heirs is identified without regard to whole blood-half blood considerations. That section directs, moreover, that the distribution to the heirs shall be *in equal parts.* The decree

and determination of heirship entered by the circuit court identifies the first cousins as the nearest living generation of kin of the decedent Ferguson—[fifteen of the half blood and two of the full blood, and only three still living]. Section 474.020 then operates to partition the estate *per capita* —*by persons*—among all the heirs of that generation still alive, and to the issue of those among them who are dead, *per stirpes*—that is, the share of the deceased parent. *See Copenhaver v. Copenhaver*, 78 Mo. 55 (1883). Section 474.040 operates to divide the inheritance among the collateral kindred entitled to take [under § 474.010] where some are of the whole blood and some are of the half blood, and to double the share to each of the whole blood, *by person*. Where, as here, any of the persons of the whole blood or of the half blood entitled to a share under § 474.040 is dead, § 474.020 operates to distribute that share to the issue of the dead person—that is, *per stirpes.*

That is the method the statute intends to determine the heirs of the intestate Ferguson and the distribution to them of the shares from that inheritance. That is the method the probate division of the circuit court adopted to adjudicate the Petition for Determination of Heirship. That is the method we approve.

These statutes, *in pari materia*, evince the determinate policy that heirs of an intestate [other than a spouse] receive the estate *in equal parts by the person*. Section 474.010 directs that the property of a decedent *shall descend and be distributed*, first to the spouse, or if none survives, then to the children or their descendants *in equal parts* [subsection 2(a) ], then to each of the class of more remote kin *in equal parts*. [Subsection 2(b) and (c) ]. That determinate policy is repeated by § 474.020— that lineal descendants of equal degree of kinship to the intestate shall take *per capita, that is, by persons*—as the postulate for the other provision of that section, that where a person entitled to take *per capita* is dead, the issue divide the share *of that person per stirpes*. *See Copenhaver v. Copenhaver*, 78 Mo. at 58; *Aull v. Day*,

133 Mo. 337, 34 S.W. 578, 579 (1896). The favor § 474.040 displays toward whole blood collateral kindred of an intestate over those of the half blood only therefore introduces a discordance which must be reconciled with the determinate policy of the legislation. *Laughlin v. Forgrave*, 432 S.W.2d 308, 313[1] (Mo. banc 1968). That reconciliation is accomplished by a *per capita* distribution, doubled in favor of *each person* of the whole blood. That accords to the whole bloods the favor the statute intends, and yet avoids the disruption of a wrought legislative scheme the distribution by the class would introduce.

The whole bloods assiduously pursue the argument with the citation of the half blood statutes of five other states. The judicial construction of those statutes is not tendered as precedent, however, since all of them are decided on the per person computation scheme used by the probate division of the circuit court to adjudicate the Petition for Determination of Heirship. They are tendered, rather, to show that since those statutes are composed differently, the text of the Missouri statute was meant to intend a division of the inheritance between the whole bloods and half bloods as separate classes. The most comparable of the statutes, the Florida enactment, rather, is construed as we construe our half blood statute. Our decision rests on the distinctive policy of our own descent and distributing statutes, as expressed and discerned. The statutes the whole bloods tender—even that of Florida—therefore, serve neither as precedents nor analogues.

█ The whole bloods argue also, and redundantly, that the share of the Ferguson estate inherited by the whole bloods should properly be divided in the first instance at the second cousin generation— the first generation of whole blood heirs in which there are living persons—since § 474.020 requires that the division of shares be at that generation in which there are living heirs of "an equal degree of consanguinity to the deceased." That argument presupposes, of course, that the

living half blood first cousins [the level of kinship at which the estate was first divided] were not of "an equal degree of consanguinity" with the whole blood first cousins [all deceased].  That argument insists on a distinction of meaning between *degree of kinship* and *degree of consanguinity* neither our decisions or statute law allows.

The judgment is affirmed.

All concur.