THE CITY OF CHICAGO, Plaintiff-Appellant, v. CROSS CITY DIS-
POSAL, INC., et al., Defendants-Appellees.

First District (5th Division)   No. 1—89—0319

Opinion filed June 22, 1990.—Rehearing denied July 25, 1990.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and L. Anita Richardson, Assistant Corporation Counsel, of counsel), for appellant.

Janette C. Wilson, of Wilson, Howard P.C., of Chicago, for appellee Cross City Disposal, Inc.

JUSTICE MURRAY delivered the opinion of the court:

The City of Chicago (City), plaintiff, appeals from an order of a trial court reducing the City's request for reimbursement costs of $635,603.18 to $295,789.73 in a nuisance abatement case.

The facts are as follows.

Defendant Henry Smith (Smith) operated a transfer dumping station known as Cross City Disposal, Inc. (Cross City), located at 8159 South Wallace in Chicago. A transfer dumping station is a dump that serves as a holding point for refuse that is later moved to a permanent dump. In May and June of 1987, inspectors from the City observed accumulations of garbage, debris, building materials and decaying food at the site. The inspectors also observed the existence of numerous rat colonies as well as rats measuring approximately 12 to 14 inches in length. As a result on June 11, 1987, the City filed a complaint for equitable and other relief against Smith and Cross City for operating an unauthorized dump in violation of the Municipal Code of Chicago. (Chicago Municipal Code, ch. 17, §§6.2, 6—3(b); ch. 99, §§4, 4.1, 4.5 (1983, as amended).) The City sought injunctive relief and an order allowing the City to abate the nuisance, with the entire cost of the abatement charged to Smith. The City also sought fines of $200 per day until the illegal use of the property ceased. Chicago Municipal Code ch. 194A, §11.13 (1988).

A temporary restraining order was issued effective June 12, 1987. The order prohibited further dumping on the site. It also ordered Smith to bear the cost of abatement. On June 26, 1987, the restraining order was modified to include property adjacent to 8159 South Wallace. On June 29, 1987, the trial court converted the temporary restraining order to a preliminary injunction and imposed a fine of $200 per day accruing until the nuisance was abated.

On September 11, 1987, the City filed its verified petition to recover the cost of abating the nuisance. The verified petition set forth costs amounting to $662,943.15. On various dates between February 2, 1988, and May 27, 1988, the trial court heard testimony in support of and in opposition to the City's verified petition for costs. At the conclusion of the hearing the City reduced its requested petition for costs from $662,943.15 to $635,603.18.

On June 29, 1988, the trial court entered an order continuing its preliminary injunction prohibiting operation of a transfer station and all dumping at the subject properties. In addition the trial court's order assessed the cost of the abatement to Smith in the amount of $295,789.73. The court also imposed a fine of $3,800 against Smith, said amount representing a fine at the rate of $200 per day for each day between the periods of June 29 and July 17 that the garbage and debris had not been removed.

The City filed a motion to reconsider and an amendment thereto. On December 22, 1988, the trial court entered its final order perma-

nently enjoining all dumping on the subject property but refusing to change its previous order to reimburse the City its full cost of reimbursement.

On January 20, 1989, the City filed a notice of appeal appealing from that portion of the order relating to the ordered reimbursement. On appeal the City argues that the trial court erred when it reduced the cost of abatement from $635,603.18 to $295,789.73. The City seeks a reversal of the trial court's order and remandment with instructions to enter an order awarding the City $635,603.18 in reimbursable costs.

We agree and reverse and remand with instructions.

■ The court is first met with a reserved ruling on motions to strike portions of Smith's appellate briefs.

On appeal, Smith, in addition to questioning the award of the cost of abatement, raises errors unrelated to the amount of the award including the issue of ownership and control of the property and the propriety of granting judicial relief. The City moved to strike those portions of Smith's brief.

We agree with the City and grant the City's motion.

A review of the record discloses that Cross City Disposal and Smith filed a notice of appeal on August 16, 1988, from the trial court's judgment of July 29, 1988. The record also discloses that a notice of appeal was filed on July 15, 1987, from orders entered by the trial court on June 12, June 22, June 25, June 29, July 2 and July 9 all in 1987. The July 15, 1987, appeal never was pursued by Cross City Disposal.

Smith and Cross City's appeal of August 16, 1988, was filed under appellate court No. 1—88—2373. A docketing statement was also filed on August 16, 1988. The record on appeal was due on October 10, 1988, but never filed. On March 7, 1989, this court dismissed the appeal in case No. 1—88—2373 for want of prosecution. Additionally, it appears that Smith and Cross City's appeal (No. 1—88—2373) was assigned to the first division of this court rather than this division and that the first division entered the March 7, 1989, order. On May 25, 1989, the mandate in appeal No. 1—88—2373 was issued. It does not appear that Smith or Cross City has ever filed a cross appeal in this appeal (case No. 1—89—0319), nor have the defendants moved to consolidate the two appeals.

Since any jurisdiction in this court with respect to the appeal filed by Smith and Cross City terminated on May 25, 1989, with the issuance of mandate, the court must sustain the City's motion and strike all portions of plaintiff's brief that refer to matters other than the

correctness or error of the award in favor of the City in the amount of $295,789.73 as opposed to the request of the City for an award of $635,306.18.

Whether Cross City Disposal, Inc., is even in existence is a factual question unanswered by the parties. The record reflects that Cross City Disposal, Inc., was dissolved by the Secretary of State on December 1, 1977, for failure to pay franchise tax. The record further reflects that the December 22, 1988, order appealed from entered judgment solely against Smith and not Cross City.

The City of Chicago is a home rule unit. By virtue of the provisions of section 6(a) of article VII of the Illinois Constitution of 1970 the City may

"exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare." (Ill. Const. 1970, art. VII, §6(a).)

The City did exercise such power with respect to abatement of nuisances by providing in part:

"[T]he expense of such abatement shall be collected from the person who may have created, continued, or suffered the nuisance to exist, in addition to any penalty or fine ***." Chicago Municipal Code ch. 99, §99—1 (1983, as amended Dec. 18, 1986.)

Also, the City's zoning ordinance provides:

"A person who violates, disobeys, omits, neglects or refuses to comply with or resists the enforcement of any of the provisions of this comprehensive amendment shall be fined not less than 50 dollars nor more than 200 dollars each day, such a violation or failure to comply is permitted to exist after notification shall constitute a separate offense." Chicago Municipal Code ch. 194A, §11.13 (1988).

The defendant argues that he is not the owner of the property upon which the nuisance existed and therefore should not be liable. However, the Municipal Code specifies that "the expense of such abatement shall be collected from the person who may have created, continued, or suffered the nuisance to exist." (Chicago Municipal Code ch. 99, §99—1 (1983, as amended Dec. 18, 1986).) The Municipal Code of the City of Chicago specifically makes no mention of ownership as a prerequisite to liability for the expense of abating a nuisance.

The issue of the question of a nuisance or violation of the zoning ordinance is not before this court in this appeal. The only issue cur-

rently before the court is whether the trial judge properly reduced the City's verified computation of the expenses of abatement of the nuisance from $635,603.18 to $295,789.73. In reducing the reimbursement amount, the trial court stated "certain budgetary items contained in the city's figures were going to go on irrespective of removal operations and there were certain costs relating to staff that would be there whether or not you had this situation or not." The court also reduced the City's reimbursable costs by an unspecified amount because of the possibility that some refuse from other parts of the City might have been included with some refuse from other parts of the defendant's property and hauled to a permanent landfill. However, the record reflects that only $3,888 of the total could be charged to commingling. The City's documentation of the cost of abatement was:

| | |
|---|---:|
| Bureau of Street Operations | $197,195.75 |
| Bureau of Sanitation | $292,948.00 |
| Bureau of Rodent Control | $105,878.55 |
| Bureau of Forestry | $2,760.00 |
| Bureau of Streets | $2,233.00 |
| Department of Sewers | $2,000.00 |
| Department of Consumer Services | $28,751.85 |
| Department of Inspectional Services | $62.33 |
| Chicago Fire Department | $9,418.00 |
| Chicago Police Department | $11,695.56 |
| | $662,943.15 |

The City voluntarily reduced the requested reimbursement amount from $662,943.15 to $635,603.18.

■■ The trial court's order does not specify how the court ultimately calculated the final reimbursement figure of $295,789.73. The trial court failed to cite any statutory or case law in support of its decision to reduce the reimbursement amount. The defendant also failed to cite any authority for his position. A point raised but not argued or supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)) and is therefore waived. (*Brown v. Tenney* (1988), 125 Ill. 2d 348, 362, 532 N.E.2d 230, 236.) Defendant presents no argument other than conclusory statements in support of his contention that the costs of abatement were excessive. Furthermore, this court has failed to find any relevant statutory or case law to support the decision of the trial court.

■■ ■ The primary rule in construing statutes and ordinances is

to ascertain and give effect to the intention of the legislative body. (*Village of Schaumburg v. Franberg* (1981), 99 Ill. App. 3d 1, 5, 424 N.E.2d 1239, 1242; *Levitt Homes, Inc. v. Old Farm Homeowner's Association* (1982), 111 Ill. App. 3d 300, 311, 444 N.E.2d 194, 201.) This is done by concentrating on the terminology, its goals and purposes, and the natural import of the words used in common general structure of the ordinance. (*Palella v. Leyden Family Service & Mental Health Center* (1980), 79 Ill. 2d 493, 500, 404 N.E.2d 228, 232; *Levitt Homes, Inc. v. Old Farm Homeowner's Association* (1982), 111 Ill. App. 3d 300, 311, 444 N.E.2d 194, 201.) The ordinance involved in this case entitles the City to recover "the expense of the abatement." The fact that the expenses included overhead items or budgetary items or items that are necessary for the operation of government is not a reason for reducing the City's abatement expenses either by statute, case law or otherwise. The trial court determined that the abatement of this nuisance was the responsibility of Smith. Smith did not abate the nuisance and various departments of the City of Chicago were ordered to do so. The various departments engaged in the abatement operation would of necessity have to diminish the services rendered to the residents of the City to clean up the nuisance caused by Smith.

Since there is not statutory or case law supporting the trial courts diminishment of the expense incurred by the City in cleaning up the nuisance created by Smith, we must reverse and remand with direction to enter judgment in the amount of $635,603.18 in favor of the City of Chicago.

Reversed and remanded with directions.

COCCIA, P.J., and GORDON, J., concur.