COJEUNAZE NURSING CENTER, Plaintiff-Appellant, v. JOHN R. LUMPKIN, Director of the Department of Public Health, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—92—2762

Opinion filed March 25, 1994.

Stackler & Augustine, of Chicago (Ronald E. Stackler and John A. Holt-away, of counsel), for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, Cojeunaze Nursing Center (Cojeunaze), appeals from an order of the trial court affirming the final decision and order of John R. Lumpkin (Lumpkin), Director of the Illinois Department of Public Health (IDPH), revoking Cojeunaze's nursing home license.

The relevant facts are as follows.

Cojeunaze is a 200-bed skilled nursing and intermediate care/long-term care facility, licensed by the IDPH. In May 1990 Dr. Yvon Nazon was convicted of 17 counts of medicaid fraud in connection

with his submission of false claims seeking payment for services not performed in the State of Indiana. See *United States v. Nazon* (7th Cir. 1991), 940 F.2d 255.

On February 19, 1991, the IDPH sent a letter to Dr. Nazon, requesting that he divest himself of his 70% ownership interest in Cojeunaze by April 19, 1991, due to his fraud conviction. The notice informed Dr. Nazon that the transferee could not be an affiliate as defined in section 1—106 of the Nursing Home Care Act (NHCA). (See 210 ILCS 45/1—106 (West 1992).) Dr. Nazon was given 90 days to effectuate the transfer and was notified that his failure to comply with the IDPH's request would result in the issuance of license revocation. In March 1991 the IDPH notified Dr. Nazon's attorney that, although the IDPH was authorized to proceed with the revocation of Dr. Nazon's license, it was willing to allow Dr. Nazon time to find a buyer or transferee who was not his affiliate, but that the IDPH would proceed with the license revocation action if the change was not effectuated by April 19, 1991.

On or about April 15, 1991, the IDPH received documents which indicated the transfer of Dr. Nazon's 70% ownership interest from Yvon Nazon to Faye H. Nazon, Cojeunaze administrator and the spouse of Dr. Nazon.[1]

On May 13, 1991, the IDPH revoked Cojeunaze's nursing home license on the basis of Dr. Nazon's conviction. Said revocation was to take effect on June 1, 1991. Pursuant to section 3—119(3)(c) of the NHCA, Cojeunaze requested a hearing to contest the revocation. 210 ILCS 45/3—119(3)(c) (West 1992).

At the administrative hearing, the IDPH presented a motion for summary judgment arguing that Faye Nazon could not be the transferee of Dr. Nazon's ownership interest since the NHCA's definition of affiliate includes a person in the first degree of kinship and that a spouse was included in the definition. The hearing officer issued a report and recommendation finding that the IDPH's motion for summary judgment should be granted, since, as a matter of law, the spouse of an individual person is an affiliate of that individual as defined by the NHCA. The hearing officer stated that "[t]o find otherwise would go against the intent of the Act and the legislature and would lead to absurd and ridiculous results." On October 15, 1991, Lumpkin issued a final decision and order adopting the report

---

[1] Cojeunaze has been owned by a partnership since 1980. Prior to the transfer of his interest to his wife, Dr. Yvon Nazon was a 70% partner and the estate of Victor Klubek was a 30% partner. No issue has been raised regarding the 30% ownership by the estate.

and recommendation of the hearing officer and revoking Cojeunaze's nursing home license.

Pursuant to the Administrative Review Law, Cojeunaze filed its complaint objecting to the revocation of its license. (735 ILCS 5/3—104 (West 1992); see also 210 ILCS 45/3—318 (West 1992).) The complaint alleged, *inter alia*, error on the part of Lumpkin and the IDPH in finding that Faye H. Nazon was an "affiliate" of Yvon Nazon as defined by section 1—106 of the NHCA. See 210 ILCS 45/1—106 (West 1992).

After hearing oral argument by respective counsel, the trial court issued a written memorandum of opinion, stating that "the dispositive issue before this Court is whether the legislature, by narrowly defining an 'affiliate' as a person related in the first degree of kinship, intended to exclude a person's spouse from the reach of the license revocation provision." The trial court affirmed the final decision and order of the IDPH, reasoning:

> "To hold that a spouse is not an 'affiliate' would contravene the obvious legislative intent of preventing unqualified individuals from operating nursing homes. Familial affiliation with a prior licensee who has been convicted of numerous criminal offenses and who is no longer permitted to hold an operating license necessarily disqualifies a spouse for purposes of the Act's licensure revocation provision."

The trial court ordered counsel to prepare a draft order consistent with its ruling. The trial court's order affirmed the final decision and order of the IDPH revoking Cojeunaze's nursing home license and stayed license revocation pending appeal.

The sole issue plaintiff raises on appeal is whether in affirming the decision and order of the IDPH revoking Cojeunaze's nursing home license, the trial court erred in its interpretation and application of the term "affiliate" with respect to the transfer of an ownership interest in a nursing home to a spouse.[2] Refreshingly, both parties meet the issue directly.

Plaintiff argues: (a) By definition of the term in the NHCA, a

---

[2]The NHCA gives IDPH the power to

> "suspend, revoke, or refuse to renew a license in any case in which the Department finds any of the following:
> ***
> (2) Conviction of the licensee, or of the person designated to manage or supervise the facility, of a felony, or of 2 or more misdemeanors involving moral turpitude, during the previous 5 years as shown by a certified copy of the record of the court of conviction." (210 ILCS 45/3—119(2) (West 1992).)

spouse cannot be an "affiliate"; (b) Absent evidence of legislative intent, the statutory language must be given its plain and commonly understood meaning; and (c) Faye H. Nazon has rights as a married woman independent of the disabilities of her husband.

Defendant argues: (a) Including a spouse within the meaning of affiliate and prohibiting a spouse from obtaining a license where the nursing home's license has previously been revoked promotes the main purpose of the NHCA, *i.e.*, the welfare of its residents; (b) Lumpkin's interpretation that a spouse is in the "first degree of kinship" with each other is consistent with the definition of the term "kinship"; and (c) The limitation of a spouse's ability to obtain a license under the NHCA controls over the provisions contained in the Rights of Married Persons Act (750 ILCS 65/1 *et seq.* (West 1992)).

■ Section 1—106 of the NHCA provides:

" 'Affiliate' means:

(1) With respect to a partnership, each partner thereof.

(2) With respect to a corporation, each officer, director and stockholder thereof.

(3) *With respect to a natural person: any person related in the first degree of kinship to that person*; each partnership and each partner thereof which that person or any affiliate of that person is a partner; and each corporation in which that person or any affiliate of that person is an officer, director or stockholder." (Emphasis added.) (210 ILCS 45/1—106 (West 1992).)

We have found no Illinois case wherein the definition of "affiliate" as used in the NHCA was at issue. In addition, we have found no Illinois case wherein the phrase "first degree of kinship" was defined.

Cojeunaze cites *Calvert v. Beck* (1941), 240 Ala. 442, 199 So. 846, and *Estate of Ferguson v. Conklin* (Mo. 1986), 723 S.W.2d 24, both of which are from other jurisdictions and deal with estate distribution questions in support of its position that "first degree of kinship" means blood relatives and not spouses. We do not feel these cases to be persuasive authority in this case.

When interpreting a statute, the primary function of a court is to ascertain and give effect to the intent of the legislature. (*Business & Professional People for the Public Interest v. Illinois Commerce Comm'n* (1991), 146 Ill. 2d 175, 207, 585 N.E.2d 1032, 1044.) The primary source for determining legislative intent is the language used in the statute. (*Business & Professional People for the Public Interest*

---

Cojeunaze does not question the power of the IDPH to require Dr. Nazon to divest himself of his ownership interest as a result of his conviction for medicaid fraud.

*v. Illinois Commerce Comm'n*, 146 Ill. 2d at 207, 585 N.E.2d at 1044.) Determining legislative intent is accomplished by concentrating on the terminology, its goals and purposes, and the natural import of the words used. *City of Chicago v. Cross City Disposal, Inc.* (1990), 200 Ill. App. 3d 520, 524-25, 558 N.E.2d 249, 252.

■ Where facts are not in dispute, their legal effect becomes a matter of law, which is reviewable by the court, and a court of review is not bound by an agency's conclusions of law. (*Callahan v. Department of State Police* (1991), 223 Ill. App. 3d 1081, 1085, 586 N.E.2d 381, 384.) Although not formally bound by administrative decisions interpreting the legal effect of statutory language, a court will give an administrative agency's conclusions great weight in the court's own statutory construction. (*Whitley v. Board of Review* (1983), 116 Ill. App. 3d 476, 478, 451 N.E.2d 942, 944.) Courts will give substantial weight and deference to the interpretation of an ambiguous statute by the agency charged with administration and enforcement of the statute. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152, 447 N.E.2d 295, 300.) "A significant reason for this deference is that courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise." *Illinois Consolidated Telephone Co.*, 95 Ill. 2d at 153, 447 N.E.2d at 300.

■ In the absence of a statutory definition indicating a different legislative intent, words are to be given their ordinary and commonly understood meaning. (*People v. Dednam* (1973), 55 Ill. 2d 565, 568, 304 N.E. 2d 627.) The dictionary can be used as a resource to ascertain the ordinary and popular meaning of words. *Dednam*, 55 Ill. 2d at 569; *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 215, 447 N.E.2d 394, 396.

The following definitions are found in Webster's Third New International Dictionary:

(1) "Affiliate" is defined as "to attach as a member or branch: bring or receive into close connection," "to join as a member: ASSOCIATE," "to connect or associate oneself." Webster's Third New International Dictionary 35 (1981).

(2) "Associate" is defined as "to join often in a loose relationship as a partner, fellow worker, colleague, friend, companion, or ally." Webster's Third New International Dictionary 132 (1981).

(3) "Kinship" is defined as "quality or state of being kin: *** *personal relationship* by blood and *sometimes by marriage.*" (Emphasis added.) Webster's Third New International Dictionary 1245 (1981).

(4) The definition of "kin" includes "*one's immediate family,*"

"one having community of interest or close affinity with another." (Emphasis added.) Webster's Third New International Dictionary 1243 (1981).

(5) "Next of kin" is defined as "1: a person in the nearest degree of relationship by blood to another person *** 2: STATUTORY NEXT OF KIN 3: *a person closely related to another person by blood, marriage, or court decision.*" (Emphasis added.) Webster's Third New International Dictionary 1524 (1981).

The NHCA defines "immediate family" as "*the spouse,* an adult child, a parent, an adult brother or sister, or an adult grandchild of a person." (Emphasis added.) 210 ILCS 45/1—114.1 (West 1992).

Black's Law Dictionary defines "next of kin" as:

"[i]n the law of descent and distribution, this term properly denotes the persons nearest of kindred to the decedent, that is, those who are most nearly related to him by blood; but it is sometimes construed to mean only those who are entitled to take under the statute of distribution and sometimes to include other persons. The term 'next of kin' is used with two meanings; (1) nearest blood relations according to law of consanguinity and (2) those entitled to take under statutory distributions of intestate's estate, and *term is not necessarily confined to relatives by blood, but may include a relationship existing by reason of marriage,* and may well embrace persons, who in natural sense of word, and in contemplation of Roman law, bear no relationship of kinship at all." (Emphasis added.) (Black's Law Dictionary 941 (5th ed. 1979).)

Finally, Black's Law Dictionary defines "degrees of kin" as "[t]he relationship between a deceased and the survivors which govern descent and distribution." Black's Law Dictionary 381 (5th ed. 1979).

██ The NHCA provides that "affiliate" means any person related in the first degree of kinship. (210 ILCS 45/1—106 (West 1992).) Black's Law Dictionary defines "degrees of kin" as:

"[t]he relationship between a deceased and the survivors which govern descent and distribution." (Black's Law Dictionary 381 (5th ed. 1979).)

In Webster's Dictionary, "kinship" is defined as the "quality or state of being kin: as a: personal relationship by blood and sometimes by marriage." (Webster's Third New International Dictionary 1245 (1981).) Black's Law Dictionary uses the word "survivors," not "blood relatives," and Webster's definition of "kinship" includes a relationship by marriage. Utilizing the dictionary to ascertain the meaning of the phrase "first degree of kinship," we believe the phrase includes one's spouse. Accordingly, we find that the trial court properly found that Faye Nazon was an affiliate as defined in section 1—106 of the NHCA.

Moreover, although we are not bound by the IDPH's decision in this case, we may give its decision great weight in our own statutory construction. (*Whitley v. Board of Review* (1983), 116 Ill. App. 3d 476, 478, 451 N.E.2d 942, 944.) We find that the IDPH's decision in this case was logical and correct.

In addition, to properly interpret a statute a court must also consider the nature, object and consequences of construing the statute one way as opposed to another. (*Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21, 373 N.E.2d 1332, 1335.) If we were to construe section 1—106 to omit a spouse from the definition of affiliate, it would result in the prohibition of a transfer from a parent to a child, yet a transfer from a husband to a wife would be allowed. We do not believe this was the intent of the legislature.

Cojeunaze points out that Faye Nazon has been the nursing home administrator for more than 10 years, and in fact she is licensed by the IDPH as a nursing home administrator. Cojeunaze states that the fact that Faye H. Nazon is the spouse of Yvon has no bearing on her qualifications to administer Cojeunaze. We agree. However, Faye's qualifications are not at issue in this case. The NHCA precludes a transfer to an affiliate. The affiliate may not be the transferee by virtue of his or her relationship with the transferor. Faye may not be the transferee due to the fact that she is an affiliate of her husband, her qualifications or lack thereof have no bearing on the issue in this case.

Finally, Cojeunaze argues that Faye has rights as a married woman independent of the disabilities of her husband.[3] There is no dispute that Faye has not been convicted of any wrongdoing or that she may own real and personal property in her own right. However, this point is irrelevant to the issue in the present case. If Faye is an affiliate, as we have determined, she may not be the transferee of Dr. Nazon's interest. Her qualifications and ability to own property are irrelevant.

For all the reasons set forth above, we affirm the decision of the trial court affirming the revocation of Cojeunaze's license.

Judgment affirmed.

GORDON and COUSINS, JJ., concur.

---

[3] The Illinois Rights of Married Persons Act provides that a married woman may own real and personal property in her own right. See 750 ILCS 65/1 *et seq.* (West 1992).