# Illinois Official Reports

## Appellate Court

---

### *Banco Popular North America v. Gizynski*, 2015 IL App (1st) 142871

---

| | |
|---|---|
| Appellate Court Caption | BANCO POPULAR NORTH AMERICA, Plaintiff-Appellee, v. MARK GIZYNSKI, Defendant-Appellant (First National Insurance Company of America; West Bend Mutual Insurance Company; Unknown Owners; and Nonrecord Claimants, Defendants). |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-2871 |
| Filed<br>Rehearing denied | August 14, 2015<br>September 23, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-3389; the Hon. Allen Walker, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Arthur C. Czaja, of Czaja Law Offices, of Niles, for appellant.<br><br>Adam K. Beattie, of Chuhak & Tecson, P.C., of Chicago, for appellee. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Palmer and Justice Reyes concurred in the judgment and opinion. |

## OPINION

¶ 1      In this mortgage foreclosure action, defendant, Mark Gizynski, appeals the orders of the trial court (1) granting the motion of plaintiff, Banco Popular North America, for summary judgment; and (2) confirming the sale of the subject property. For the following reasons, we reverse and remand.

¶ 2                          BACKGROUND

¶ 3      On January 26, 2011, plaintiff Banco Popular North America filed a complaint to foreclose on a commercial mortgage on property owned by defendant Mark Gizynski located on West Belmont Avenue in Chicago.

¶ 4      On March 21, 2011, plaintiff filed a motion to appoint a receiver for the property. Attached to the motion was an affidavit from William Bolsen, plaintiff's vice president, which describes the property as four buildings. The first building has office space on the first floor with a storage/warehouse area in the back, and the second and third floors were built as offices with kitchen areas, but are currently occupied as residences. The second building has a high one-story warehouse on the ground floor with a partial second floor built as an office/studio. The third building has a high one-story warehouse on the ground floor. The fourth building has office space on the first floor with a storage/warehouse area in the back and office space on the second floor with a storage area in the back.

¶ 5      On April 6, 2011, the trial court granted plaintiff's motion to appoint a receiver. The order was entered on an electronic form, apparently by filling in blanks and selecting options.[1] In the court's order, the court specifically found that "[t]he property does not fall within the definition of 'Residential Real Estate' under the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1219[ ] [(West 2010)])."

¶ 6      Section 15-1502.5 of the Illinois Mortgage Foreclosure Law (Foreclosure Law), commonly known as the "Homeowner Protection Act" (Act), describes protections afforded to mortgagors of residential property (735 ILCS 5/15-1502.5 (West 2010)). The Act was written to provide owners of single-family, owner-occupied properties an additional last-minute escape valve to rescue their mortgages before the lender files a suit under the Foreclosure Law. The grace period notice required by the Act directs the borrower to various resources available for counseling and loan modification assistance. 735 ILCS 5/15-1502.5(c) (West 2010). If a counseling agency approved by the United States Department of Housing and Urban Development notifies the lender within the 30-day period that the borrower is seeking approved counseling services, the lender cannot file suit until an additional 30 days has passed. 735 ILCS 5/15-1502.5(c) (West 2010). A grace period notice is required before any foreclosure action may be instituted. Section 15-1502.5(c) of the Foreclosure Law provides that:

---

[1]The order is labeled "Form 20" and contains places for the trial court to "choose one" of a list of options. At least one paragraph was copied verbatim from plaintiff's uncontested motion to appoint a receiver. The five-page form contains a single line for the trial court to find that the property was not residential real estate under the Illinois Mortgage Foreclosure Law. 735 ILCS 5/15-1219 (West 2010).

"No foreclosure action under Part 15 of Article XV of the Code of Civil Procedure shall be instituted on a mortgage secured by residential real estate before mailing the notice described in this subsection (c).

The notice required in this subsection (c) shall state the date on which the notice was mailed, shall be headed in bold 14-point type 'GRACE PERIOD NOTICE', and shall state the following in 14-point type: 'YOUR LOAN IS MORE THAN 30 DAYS PAST DUE. YOU MAY BE EXPERIENCING FINANCIAL DIFFICULTY. *** A LIST OF APPROVED COUNSELING AGENCIES MAY BE OBTAINED FROM THE ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION.'

\*\*\*

The sending of the notice required under this subsection (c) means depositing or causing to be deposited into the United States mail an envelope with first-class postage prepaid that contains the document to be delivered. The envelope shall be addressed to the mortgagor at the common address of the residential real estate securing the mortgage." 735 ILCS 5/15-1502.5(c) (West 2010).

¶ 7 Section 15-1219 of the Foreclosure Law defines residential real estate:

" 'Residential real estate' means any real estate, except a single tract of agricultural real estate consisting of more than 40 acres, which is improved with a single family residence or residential condominium units or a multiple dwelling structure containing single family dwelling units for six or fewer families living independently of each other, which residence, or at least one of which condominium or dwelling units, is occupied as a principal residence either (i) if a mortgagor is an individual, by that mortgagor, that mortgagor's spouse or that mortgagor's descendants, or (ii) if a mortgagor is a trustee of a trust or an executor or administrator of an estate, by a beneficiary of that trust or estate or by such beneficiary's spouse or descendants or (iii) if a mortgagor is a corporation, by persons owning collectively at least 50 percent of the shares of voting stock of such corporation or by a spouse or descendants of such persons. The use of a portion of residential real estate for non-residential purposes shall not affect the characterization of such real estate as residential real estate." 735 ILCS 5/15-1219 (West 2010).

¶ 8 On April 14, 2011, defendant filed a Chapter 7 bankruptcy case, and the foreclosure proceedings were subject to an automatic stay. On October 17, 2011, the automatic stay was lifted.

¶ 9 On October 27, 2011, defendant filed a motion to dismiss the foreclosure complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)). Attached to the motion as an exhibit was an affidavit of defendant, averring that he had lived at the subject property since 1986 as his residence.

¶ 10 On November 23, 2011, the court appointed receiver moved for approval of the receiver's initial report. Attached to the motion was a copy of the initial report, which contained copies of seven leases for units on the property. Five of those leases were on forms titled "Chicago Apartment Lease," while the other two leases were on forms titled "Office Lease."

¶ 11 On December 13, 2011, defendant filed an amended 2-615 motion to dismiss the complaint. The motion argued that the subject property met the definition of "Residential Real

Estate" pursuant to section 15-1219 of the Foreclosure Law (735 ILCS 5/15-1219 (West 2010)) because the property was a "multiple dwelling structure containing single family dwelling units for six or fewer families." Defendant argued that, since plaintiff's complaint was captioned as a "Commercial Foreclosure," the complaint was erroneously filed, and that since plaintiff's motion to appoint a receiver described the property as commercial, the motion was incorrectly pled and insufficient as a matter of law.

¶ 12    On April 6, 2012, plaintiff filed a response to defendant's motion to dismiss, arguing: (a) that defendant's motion was legally deficient, (b) that even if part of the property was used as residential that is not a basis to dismiss the claim, and (c) that the property is not residential and that this issue was decided during the hearing on plaintiff's motion to appoint a receiver.[2] On April 20, 2012, defendant filed a reply. He argued that he was unable to attend the hearing on plaintiff's motion to appoint a receiver because he was suffering from a debilitating gastrointestinal illness. He attached an ambulance bill, dated April 15, 2011, to his reply. He also attached a printout from the tax assessor's office, showing that a homeowner exemption had been applied to the subject property.[3]

¶ 13    On May 7, 2012, the motion was denied without prejudice.

¶ 14    On August 20, 2012, defendant filed a motion to vacate all orders and to dismiss plaintiff's complaint for lack of subject matter jurisdiction. Defendant claimed that the property met the section 15-1219 definition of residential property, and that, therefore, no foreclosure action could be instituted without the mortgagee mailing the notice described in section 15-1502.5 of the Foreclosure Law (735 ILCS 5/15-1502.5 (West 2010)). Section 15-1502.5, the Act, provides a non-waivable notice requirement and 30-day grace period that must be observed before a mortgagee institutes a foreclosure action (735 ILCS 5/15-1502.5 (West 2010)). Defendant argues that since plaintiff did not comply with the notice requirements of section 15-1502.5, the trial court lacked subject matter jurisdiction. Attached to the motion was an affidavit from defendant, in which he averred that he did not receive notice as required by section 15-1502.5, and that the subject property was his primary residence. Also attached to the motion was an affidavit from Alderman Ariel Reboyras, in which he averred that he personally knew defendant, and that defendant occupied one of the units on the subject property as his primary residence, and that the property consists of five residential units and two office spaces. Also attached to the motion were the affidavits of Zdieslaw Sieradz, Dominik & Justyna Podsiadlo, and Tomasz Plewa, each of whom averred that they lived at the subject property as lessees and that the property consists of five residential units and two office spaces.

¶ 15    On November 20, 2012, plaintiff filed a response to defendant's motion to vacate. In its response, plaintiff argued that even if the property was residential, the trial court would still have subject matter jurisdiction, and that the property was not residential, because: (1) it did not meet the section 15-1219 definition of "Residential Real Estate"; (2) defendant was not an occupant; and (3) the trial court's previous finding in the order appointing a receiver that the property was not "Residential Real Estate" has become the law of the case.

¶ 16    On December 31, 2012, defendant filed a reply and attached affidavits from: (1) Arthur Czaja, defendant's counsel; (2) Ted Lach, owner of a company located near the subject

---

[2]Defendant had notice of this hearing, but did not appear at it.

[3]The printout does not clarify whether the homeowner exemption applied to the entire property, or just a portion of it.

property; and (3) Jim Morgan, another owner of a company located near the subject property. Each affiant averred that defendant occupied one of the units on the subject property as his primary residence. Also attached was an affidavit from Jessie Leszanczuk, who averred that she owned Realty Zone, LLC, a company located at the subject property, and that the office space occupied by Realty Zone, LLC, lacked a full bathroom and was not suitable for a residence. Defendant had thus supplied a total of nine affidavits to support his claim that the property contained five residential units and two offices and that he occupied one of the units as his primary residence. 735 ILCS 5/15-1219 (West 2010) (residential real estate includes a multi-dwelling structure with six or fewer dwelling units where one is occupied by the mortgagor as his primary residence).

¶ 17    On February 22, 2013, the trial court denied defendant's motion to vacate and to dismiss for lack of subject matter jurisdiction.

¶ 18    On March 21, 2013, defendant filed a motion for summary judgment. In the motion, defendant claimed that summary judgment was proper because his property was "Residential Real Estate" and that plaintiff had not provided a section 15-1502.5 grace period notice (735 ILCS 5/15-1502.5 (West 2010)). On April 26, 2013, plaintiff filed a response which reiterated the arguments in its November 20, 2012, response to defendant's motion to vacate. On May 8, 2013, defendant filed a reply.

¶ 19    On May 17, 2013, the trial court denied defendant's motion for summary judgment.

¶ 20    On June 5, 2013, plaintiff filed a motion for summary judgment. Plaintiff claimed that defendant had provided no evidence to suggest (1) that plaintiff was not the owner and legal holder of the mortgage, (2) that defendant has not defaulted on the loan, or (3) that defendant had any other defense.

¶ 21    On September 23, 2013, defendant filed a response to plaintiff's motion for summary judgment, in which defendant claimed that there was a material issue of fact as to whether defendant occupied one of the units at the property as his primary residence and whether the property was "Residential Real Estate." 735 ILCS 5/15-1219 (West 2010). On November 4, 2013, plaintiff filed a reply, claiming that defendant did not raise a genuine issue of a material fact as to the nonresidential nature of the property, and even if the property was used as residential, defendant had not raised a genuine issue of fact as to whether he had been prejudiced by the lack of notice.

¶ 22    On November 18, 2013, the trial court granted plaintiff's motion for summary judgment and, on January 17, 2014, the trial court entered a judgment of foreclosure and sale.

¶ 23    On January 24, 2014, plaintiff served a notice of sale, and the sale was scheduled for February 21, 2014.

¶ 24    On February 14, 2014, defendant filed an emergency motion to stay the judicial sale and a motion to reconsider the order granting summary judgment. In the motion to reconsider, defendant again claimed that one of the units at the property was being used as his residence.

¶ 25    On February 21, 2014, the scheduled day of the sale, the trial court granted defendant's emergency motion to stay the judicial sale.

¶ 26    On March 21, 2014, plaintiff filed a response to defendant's motion to reconsider, in which plaintiff claimed that defendant's motion merely restated prior arguments and presented no new facts. On April 18, 2014, defendant filed a reply.

¶ 27 On April 28, 2014, the trial court denied defendant's motion to reconsider. In the same order, the trial court ordered that the "sale date of April 30, 2014 shall stand."

¶ 28 On July 2, 2014, plaintiff filed a motion for entry of an order approving the report of sale. Attached to the motion was a copy of an independent assessment of the property which, among other things, described it as being zoned C1-2, or "neighborhood commercial."

¶ 29 On August 20, 2014, during the hearing on plaintiff's motion, defendant argued that plaintiff had not given him a required written notice of the sale. Defendant claimed that the lack of notice caused him prejudice because, by the April 28 hearing denying the motion to reconsider when defendant received actual notice of the sale date, it was too late to file an emergency motion to stay the sale or to pressure a potential buyer into making a firm offer. Notwithstanding defendant's argument, the trial court granted plaintiff's motion and entered an order approving the sale.

¶ 30 Less than 30 days later, on September 17, 2014, defendant filed a notice of appeal, which stated that the relief he sought from the reviewing court was the "denial of plaintiff's motion for summary judgment and [the] denial of plaintiff's motion for order approving sale." This appeal followed.

¶ 31                                    ANALYSIS

¶ 32 On this appeal, defendant claims, first, that the trial court erred in granting plaintiff's motion for summary judgment because: (1) there was a genuine issue of material fact concerning whether his property fell within the purview of the Act (735 ILCS 5/15-1502.5 (West 2010)); and (2) assuming *arguendo* that the property was being used as residential within the purview of the act, then defendant was entitled to a grace period notice which plaintiff concedes it did not provide. Second, defendant claims that the trial court abused its discretion by approving the April 30, 2014, judicial sale, because plaintiff failed to provide defendant notice of the sale at least seven days prior to its scheduled date.

¶ 33 In response, plaintiff argues, first, that defendant's failure to provide key parts of the record requires dismissal of the appeal. Second, plaintiff argues that the trial court properly entered summary judgment, because (1) the property is not residential under the act; (2) plaintiff forfeited this issue; and (3) the lack of a grace period notice does not bar entry of summary judgment for defendant. Third, plaintiff argues that defendant waived notice of the judicial sale and failed to properly move to vacate the sale.

¶ 34 For the following reasons, we reverse the trial court's grant of summary judgment for plaintiff and remand for further proceedings consistent with this opinion.

¶ 35                              I. Summary Judgment

¶ 36 On this appeal, defendant claims, first, that the trial court erred in granting plaintiff's motion for summary judgment because: (1) there was a genuine issue of material fact concerning whether the subject property is residential under the Act; and (2) assuming *arguendo* that the property was residential, then defendant was entitled to a grace period notice which plaintiff concedes it did not provide. A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). The trial

court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). In appeals from summary judgment rulings, we conduct a *de novo* review. *State Farm Mutual Automobile Insurance Co. v. Progressive Northern Insurance Co.*, 2015 IL App (1st) 140447, ¶ 63. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 37     "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 375 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 38     To the extent that reviewing the grant of summary judgment requires us to determine how the statute defines the term "residential real estate" (735 ILCS 5/15-1219 (West 2010)), that is a question of statutory interpretation. Issues of statutory construction are questions of law, and are also reviewed *de novo*. *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 10. As noted, *de novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 39                                         A. Sufficiency of the Record

¶ 40     As an initial matter, we consider plaintiff's argument that the record is not sufficient for us to consider this appeal. Plaintiff claims that defendant failed to include key parts of the record, including portions that would be critical to defendant's argument. While plaintiff specifically claims that defendant failed to include the February 21, 2014, order staying the judicial sale, that order is present in the record at page 2962. All of the record entries plaintiff claims to be missing implicate the matter decided in the August 20, 2014, order approving the report of sale, and that order–as well as a transcript of the hearing producing it–is in the record. Thus the record is sufficiently complete for us to consider the merits of the arguments raised on appeal. In addition, if plaintiff believed that the record on appeal was insufficient, it could have moved to supplement that record pursuant to Illinois Supreme Court Rule 329 (eff. Jan. 1, 2006).

¶ 41                                         B. Forfeiture

¶ 42     Also, as an initial matter, we do not find persuasive defendant's argument that plaintiff forfeited the issue of the residential nature of the property. Plaintiff claims that, since defendant failed to appeal the April 6, 2011, order which found that the property was not residential and which appointed a receiver, he forfeited the issue, and the finding in that order became the law of the case. An order appointing a receiver "may" be reviewed in an

interlocutory appeal pursuant to Illinois Supreme Court Rule 307 (eff. Feb. 26, 2010). In support, plaintiff quotes *Hwang v. Tyler*, 253 Ill. App. 3d 43, 46 (1993), which states that "[g]enerally, a party's failure to timely appeal from an order which was appealable under Rule 307(a) renders that order the law of the case" (citing *Wolfe v. Illini Federal Savings & Loan Ass'n*, 158 Ill. App. 3d 321, 324 (1987)).

¶ 43    However, in a subsequent case, our supreme court held that, since "[t]he optional nature of Rule 307 is manifest from the language it employs," a party's "failure to file an appeal from the interlocutory order did not result in a forfeiture." *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11-12 (2001). The court explained: "Rule 307 plainly states that an appeal 'may' be taken to the appellate court from an interlocutory order of the circuit court. Use of the word 'may' is generally regarded as indicating that action is permissive rather than mandatory. [Citation.] There is no basis for construing the term differently here." *Salsitz*, 198 Ill. 2d at 11-12. *Salsitz* involved an appeal concerning the arbitrability of disputes, which is appealable under Rule 307(a)(1) (*Salsitz*, 198 Ill. 2d at 11), while motions appointing receivers are appealable under Rule 307(a)(5). Nonetheless, the "may" in Rule 307(a) applies to both subsections, and thus *Salsitz* governs our case. Pursuant to *Salsitz*, defendant did not waive the issue by opting not to file an interlocutory appeal.

¶ 44    Since we are not persuaded by plaintiff's preliminary arguments, we turn now to defendant's substantive claims.

¶ 45                                C. Residential Real Estate

¶ 46    Defendant first claims that the trial court erred by granting summary judgment for plaintiff, because the issue of whether his property was residential under the Act presented, at least, a genuine issue of material fact. Defendant argues that section 15-1219 necessitated a finding that his property was "Residential Real Estate" (735 ILCS 5/15-1219 (West 2010)), and that he was thus entitled to the protections described in section 15-1502.5 of the Foreclosure Law (735 ILCS 5/15-1502.5 (West 2010)). Plaintiff responds that the property was not residential under the Act.

¶ 47    The goal of a court when constructing a statute is to ascertain and give effect to the legislature's intent. *Stewart v. Industrial Comm'n*, 115 Ill. 2d 337, 341 (1987). The best indication of legislative intent is the statute's language. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003). "In the absence of a statutory definition indicating a different legislative intent, words are to be given their ordinary and commonly understood meanings. [Citation.] 'The dictionary can be used as a resource to ascertain the ordinary and popular meaning of words.' " *Bailey v. Illinois Liquor Control Comm'n*, 405 Ill. App. 3d 550, 555 (2010) (quoting *Cojeunaze Nursing Center v. Lumpkin*, 260 Ill. App. 3d 1024, 1029 (1994)). However, we must assume that the legislature did not intend an absurd result. *Stewart*, 115 Ill. 2d at 341.

¶ 48    As noted, section 15-1502.5 is entitled "Homeowner protection" and it provides, in relevant part, that: "if a mortgage secured by *residential real estate* becomes delinquent by more than 30 days the mortgagee shall send via U.S. mail a notice advising the mortgagor that he or she may wish to seek approved housing counseling." (Emphasis added.) 735 ILCS 5/15-1502.5(c) (West 2010).[4] Defendant argues that since his property was a multiple

---

[4]This section is quoted more fully (*infra* ¶ 59) and its protections are discussed more fully in the following section of this opinion.

dwelling structure used as residential by him and four others, he was entitled to the protections this section provides.

¶ 49    Section 15-1219 of the Foreclosure Law defines "Residential Real Estate" as:

"[A]ny real estate *** which is improved with a single family residence or residential condominium units or a multiple dwelling structure containing single family dwelling units for six or fewer families living independently of each other, which residence, or at least one of which condominium or dwelling units, is occupied as a principal residence *** (i) if a mortgagor is an individual, by that mortgagor, that mortgagor's spouse or that mortgagor's descendants ***. The use of a portion of residential real estate for non-residential purposes shall not affect the characterization of such real estate as residential." (Emphasis added.) 735 ILCS 5/15-1219 (West 2010).

Thus, the plain language of the statute defines "residential real estate" to include a structure with six or fewer single family dwelling units, where one of the units is occupied by the mortgagor as his principal residence.

¶ 50    The parties have not cited any authority, and we have discovered none in conducting our own research, in which any court has interpreted the term "single family dwelling unit" for purposes of section 15-1219 of the Foreclosure Law.[5] However, in the context of other statutes, this court has found that the term " '[d]welling unit' reflects the current or intended future *use* of a space as a residence." (Emphasis added.) *Skarin Custom Homes, Inc. v. Ross*, 388 Ill. App. 3d 739, 743 (2009) (finding that inhabited structure fit definition of dwelling unit under Residential Real Property Disclosure Act); see also *Grady v. Sikorski*, 349 Ill. App. 3d 774, 778 (2004) (finding that uninhabitable structure was not a residential dwelling unit under Residential Real Property Disclosure Act); *People v. Silva*, 256 Ill. App. 3d 414, 420 (1993) (holding that when the court "could have inferred that complainant intended either to live in the unoccupied space or to rent the space to a tenant," the unoccupied space was a dwelling under residential burglary statute (superseded by statute (720 ILCS 5/2-6(b) (West 1992)))). In the absence of a definition within the statute itself, we apply the "current or intended future use" standard in determining if a unit is a dwelling unit. In other words, the court must determine how the property is being *used*.

¶ 51    Defendant's property has a total of seven units. At the time of the foreclosure, both the current and intended future use of five of those units was as residences. Those units have facilities for sanitation and food preparation and are being rented to single families as residences or "single family dwelling units." 735 ILCS 5/15-1219 (West 2010). In fact, the leases to these units are titled "Chicago Apartment Lease." Two of the seven units do not have such facilities, and were being rented to businesses as offices. The leases to those units are titled "Office Lease." Defendant's primary residence was in one of the five residential units.

---

[5]Section 15-1202.5 of the Foreclosure Law defines a "dwelling unit" as "a room or suite of rooms providing complete, independent living facilities for at least one person, including permanent provisions for sanitation, cooking, eating, sleeping, and other activities routinely associated with daily life." 735 ILCS 5/15-1202.5 (West 2010). However, this definition applies only to certain sections of the Foreclosure Law, and sections 15-1219 and 15-1502.5 are not among them. 735 ILCS 5/15-1202.5 (West 2010). Assuming, *arguendo*, that this definition did apply, the units in the subject property currently used as residences meet the requirements of the definition, and those units not currently in use as residences do not.

The parties do not contest these facts, and affidavits attached to defendant's motions, as well as the numerous receiver reports in the record, support these facts. Accordingly, since the property was used as a residence, defendant was entitled to the protections provided to mortgagors of residential real estate by the Foreclosure Law. 735 ILCS 5/15-1502.5(c) (West 2010).

¶ 52 Plaintiff claims that the presence of two nonresidential units prevents the subject property from being residential real estate. Plaintiff argues, first, that the property is not a "multiple dwelling structure" because it also contains two offices; and second, that the "non-residential" sentence of the statute does not apply because the property must first be found to be a "multiple dwelling structure" before this sentence applies. We do not find plaintiff's arguments to be persuasive.

¶ 53 Plaintiff argues, first, that because of the two offices, the property does not qualify as a "multiple dwelling structure containing single family dwelling units for six or fewer families." 735 ILCS 5/15-1219 (West 2010). In other words, plaintiff reads the statute as requiring a "multiple dwelling structure *having only* single family dwelling units for six or fewer families." However, the dictionary does not define the word "containing" as meaning "having only." Webster's Third New International Dictionary of the English Language defines "contain" as "to have within" or "to consist of wholly or in part." Webster's Third New International Dictionary 491 (1993). Not only does this definition fail to suggest that "contain" implies an exhaustive list, it explicitly states that an object which consists "in part" of something contains it. Defendant's property consists in part of "single family dwelling units for six or fewer families living independently." 735 ILCS 5/15-1219 (West 2010).

¶ 54 Plaintiff argues further that if we fail to adopt its interpretation then "even a high-rise tower with hundreds of commercial units would be deemed 'residential' if one owner lived in a single unit on the property." Plaintiff's understanding of the concept is incorrect. The court does not look at the total project of a multiple-dwelling structure to determine the character of the property for the purposes of determining whether a statutory notice is required. The court looks at the multiple-dwelling structure and first determines whether it contains single-family dwelling units for six or fewer families living independently of each other. The court then determines how only the units are being used, and if one unit is being used as a single-family dwelling unit, the occupant of that unit is entitled to the protections provided to mortgagors of residential real estate by the Foreclosure Law. 735 ILCS 5/15-1502.5 (West 2010). In addition, the statute specifically provides that "[t]he use of a portion of residential real estate for non-residential purposes shall not affect the characterization of such real estate as residential." 735 ILCS 5/15-1219 (West 2010).

¶ 55 Plaintiff also argues that the property must *first* be characterized as a multiple dwelling structure before the nonresidential sentence applies. Initially, we note that the property has five units being used as dwelling units and can be characterized as a multiple dwelling structure on that ground. Furthermore, the sentence about nonresidential real estate states that it is to be used in determining whether a property should be "characteriz[ed]" as residential real estate. 735 ILCS 5/15-1219 (West 2010). Similarly, the phrase "multiple dwelling structure" is also to be used in determining whether a property should be characterized as residential property. 735 ILCS 5/15-1219 (West 2010). Thus, both sentences are part of the same determination. There is no indication that one sentence trumps the other or that one sentence must be considered

first, as plaintiff argues. Both lines are to be utilized in the same determination. Thus, we do not find persuasive plaintiff's arguments that one sentence trumps the other.

¶ 56    Plaintiff finally argues that the property cannot be characterized as a multiple dwelling structure because it has "two *entirely separate* commercial spaces." What plaintiff appears to be arguing is that we should read the statute as permitting *not* the commercial "use of a portion of residential real estate" but, rather, the commercial "use of a portion of a residential *unit*." However, the statute was not written that way.

¶ 57    Even if the plain meaning of the statute's words are unclear, the purpose of the statute necessitates this result. "[I]f the meaning of an enactment is unclear from the statutory language itself, the court may look beyond the language employed and consider the purpose behind the law *** as well as other sources of legislative history." *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2014 IL 115526, ¶ 24. A statute's title can be used to provide guidance in resolving statutory ambiguities. *Home Star*, 2014 IL 115526, ¶ 40. Section 15-1502.5 of the Foreclosure Law, which uses the definition of "Residential Real Estate" in section 15-1219 and which defendant claims is the statute violated by plaintiff, is entitled "Homeowner protection." 735 ILCS 5/15-1502.5 (West 2010). We see no reason to interpret the definition of a term used in a "Homeowner protection" act in a way which would limit the protections homeowners have against banks foreclosing on their mortgages. While this is the interpretation that plaintiff urges, it is not one which furthers the purpose behind the law.

¶ 58    <center>D. 30-Day Grace Period</center>

¶ 59    Defendant next claims that, since his property was residential real estate, he was entitled to the following protections described in section 15-1502.5 of the Foreclosure Law:

> "[I]f a mortgage secured by residential real estate becomes delinquent by more than 30 days the mortgagee shall send via U.S. mail a notice advising the mortgagor that he or she may wish to seek approved housing counseling. Notwithstanding anything to the contrary in this Section, nothing shall preclude the mortgagor and mortgagee from communicating with each other during the initial 30 days of delinquency or reaching agreement on a sustainable loan workout plan, or both.
>
> No foreclosure action under Part 15 of Article XV of the Code of Civil Procedure shall be instituted on a mortgage secured by residential real estate *before* mailing the notice described in this subsection (c).
>
> <center>* * *</center>
>
> (d) Until 30 days after mailing the notice provided for under subsection (c) of this Section, no legal action shall be instituted under Part 15 of Article XV of the Code of Civil Procedure.
>
> <center>* * *</center>
>
> (h) There shall be no waiver of any provision of this Section." (Emphasis added.) 735 ILCS 5/15-1502.5 (West 2010).

¶ 60    Plaintiff does not contest that the notice, required by section 15-1502.5(c) quoted above, was never given. However, plaintiff argues that this notice was unnecessary. Plaintiff cites *Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶ 27, in support of its argument that, even when the process utilized "did not occur exactly as the statute dictates, the

law would not require a futile act to redo the process." (Internal quotation marks omitted.) However, *Pajor* is distinguishable from the case on appeal. In *Pajor*, notice of the grace period was given more than 30 days before the filing of the foreclosure action, but the notice had been given before the plaintiff had officially become the mortgagee. *Pajor*, 2012 IL App (2d) 110899, ¶ 26. Thus, the *Pajor* court held that where "the mortgagor has alleged only a technical defect in the notice," dismissal of the foreclosure complaint would be futile. *Pajor*, 2012 IL App (2d) 110899, ¶ 27. By contrast, in the present case, plaintiff concedes that the required notice was *never* given.

¶ 61        Plaintiff argues that, since defendant was on notice *after* the foreclosure action was filed, and since he had "ample time to communicate and negotiate with the bank," there was no need for the notice required by section 15-1502.5 of the Foreclosure Law. However, the statute expressly states "before" (735 ILCS 5/15-1502.5(c) (West 2010)), and this court has held that the purpose of section 15-1502.5 is to encourage workouts for mortgages in default *before* a foreclosure action is brought. See *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶¶ 106-07. In *Adeyiga*, we explained:

> "The Homeowner Protection Act[6] was written to provide owners of *** owner-occupied properties an additional last-minute escape valve to rescue their mortgages *before* the lender files a suit under the Foreclosure Law. The grace period notice required by the Act directs the borrower to various resources available for counseling and loan modification assistance. 735 ILCS 5/15-1502.5(c) (West 2010). If a Housing and Urban Development (HUD)-approved counseling agency notifies the lender within the 30-day period that the borrower is seeking approved counseling services, the lender cannot file suit until an additional 30 days has passed. 735 ILCS 5/15-1502.5(e) (West 2010)." (Emphasis added.) *Adeyiga*, 2014 IL App (1st) 131252, ¶ 106.

Although *Adeyiga* involved a single-family dwelling and our case involves a multiple-dwelling structure, the protections provided by section 15-1502.5 are the same when the multiple-dwelling structure has six or fewer units being used as residential units and when the owner uses one of the units as his primary residence. In *Adeyiga*, where the defendant never received a grace-period notice, this court held that the defendant's right to a grace-period notice was not waived. *Adeyiga*, 2014 IL App (1st) 131252, ¶ 107. Section 15-1502.5(h) of the Foreclosure Law specifically states that the grace-period notice cannot be waived. 735 ILCS 5/15-1502.5(h) (West 2010).

¶ 62        Plaintiff argues that defendant did not show ample prejudice. However, even though we cannot assume that had defendant received such notice, he necessarily would have been able to create a workout plan, "it is the intent of the legislature for each mortgagor to have this opportunity *prior* to any foreclosure action." (Emphasis added.) *Adeyiga*, 2014 IL App (1st) 131252, ¶ 107. This opportunity was never given to defendant. Plaintiff has not cited any case

---

[6]The Act requires a mortgagee to give notice to delinquent mortgagors 30 days before instituting a foreclosure action, where the mortgage is secured by residential property. The Act describes in detail the information that needs to be included in the notice, including information on where to find approved housing counseling agencies and how to contact the mortgagee. The Act does not distinguish between single-family residences and multiple-dwelling structures; its protections apply to any "mortgage secured by residential real estate," so long as the mortgagor has not filed for bankruptcy relief. 735 ILCS 5/15-1502.5(c) (West 2010).

law that says that a defendant must show prejudice if no statutory notice is given under section 15-1502.5 of the Foreclosure Law.

¶ 63    Thus, we do not find persuasive plaintiff's argument that the statutorily required written notice was not necessary. Since defendant claims that his property was used as his primary residence and the required notice was not given, there is a genuine issue of material fact that must be decided, and thus, the trial court erred by granting summary judgment in favor of plaintiff and we must reverse.

¶ 64                              II. Notice of the April 30, 2014, Judicial Sale

¶ 65    Defendant also claims that the trial court erred in approving the April 30, 2014, judicial sale, because he was never given notice of the postponed sale by plaintiff. However, since we are reversing on the first issue, we need not consider the merits of the second.

¶ 66                                            CONCLUSION

¶ 67    In sum, we reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

¶ 68    Reversed and remanded.