NOTICE

Decision filed 06/03/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230785-U

NO. 5-23-0785

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 23-TR-1004 |
| | ) | |
| THEODORE A. PUCKETT, | ) | Honorable |
| | ) | Joshua C. Morrison, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Sholar concurred in the judgment.

**ORDER**

¶ 1 *Held*: The circuit court did not err in finding the defendant guilty of operating an uninsured motor vehicle and entering a financial sentencing order fining him for the offense. The court also properly denied his motion to quash administrative summons. The defendant was not issued an administrative summons, he did not have a right to counsel for his charge of a petty traffic offense, and he failed to support any argument why he should not have been convicted. Therefore, the judgment of the circuit court is affirmed.

¶ 2 Defendant Theodore A. Puckett was found guilty of operating an uninsured motor vehicle. Puckett now appeals, *pro se*, from the circuit court's denial of his motion to quash administrative summons and entry of a financial sentencing order.

¶ 3 BACKGROUND

¶ 4 On June 6, 2023, Puckett was driving his car when he was stopped by Centralia police officer Nicholas Easley in Marion County, Illinois. The reason for the stop, according to Officer

1

Easley's testimony at trial, was that he noticed the driver was not wearing a seatbelt.[1] Easley asked Puckett for proof of insurance, which he did not have. Easley issued Puckett a traffic citation for driving without a seatbelt and operating an uninsured vehicle.

¶ 5    On September 29, 2023, Puckett filed a *pro se* motion, entitled "Notice to Quash Administrative Summons (Traffic Citation)," arguing that traffic fines constitute a "cash cow" for the administrative state, and the proceedings on the citation effectively require citizens to "waiv[e] probable cause and due process." He also requested an attorney, a fee waiver, and a court reporter. The circuit court addressed Puckett's motions at a hearing on October 2, 2023, before proceeding directly to a bench trial. The court provided a court reporter and denied the remaining requests.

¶ 6    When the case proceeded to a bench trial, Puckett argued that he could not participate in the trial because he had been unable to obtain counsel. The court informed him that it had denied his request to appoint counsel because this matter involved a petty offense, which does not qualify for the appointment of a public defender.

¶ 7    The court also noted that the complaint was filed on June 12, 2023, and there was ample time between then and the October 2, 2023, trial date to find an attorney. There had also been two prior hearings in the matter, and Puckett had not procured an attorney for either hearing. When the court asked him why, in over three months' time, he had not been able to obtain counsel, Puckett responded that he had not found anyone capable. He also stated that he might not be able to find an attorney, even if the court continued the matter. The court concluded that there was no reason to delay, and proceeded with the bench trial.

---

[1]The traffic citation is for failure to wear a seatbelt and operating an uninsured vehicle; however, the record of proceedings and financial sentencing order indicate that he was found guilty of the offense of operating an uninsured vehicle. Regardless, the specific charges are not at issue on appeal, and Puckett does not contest that he was not wearing a seatbelt and did not have proof of insurance.

¶ 8    At trial, Officer Easley testified about stopping Puckett's vehicle because Puckett was driving without a seatbelt. He then asked to see proof of insurance, which Puckett did not provide. Puckett declined to cross-examine Easley, and further declined to testify, stating only that he objected to the trial. The court found Puckett guilty of operating an uninsured vehicle based on the evidence presented by the State, and imposed a fine of $501 plus court costs. Puckett stated that he did not intend to pay the fine, and the court informed him that that would result in the suspension of his license. Puckett also refused to sign the financial sentencing order, and the court noted for the record that it would be signed as "refused by defendant." The court then admonished him on his right to appeal.

¶ 9    Puckett filed a notice of appeal.[2] He argues that he should not have been issued a traffic citation for driving without insurance in Illinois, because he is a Tennessee resident, and Tennessee does not have a mandatory proof of insurance law like Illinois does. He claims that the circuit court denied his motion to quash without explanation and proceeded to trial over his protests that he could not participate because he was unable to find counsel. He further contends that the circuit court falsely stated that Puckett had entered a plea of guilty.

¶ 10    Puckett additionally argues that the court should have granted his motion to quash because allowing a police officer to summon him to court is a violation of the principle of separation of powers since police officers are not part of the judicial branch. He requests as relief the dismissal of the charge against him, as well as the reinstatement of his driving privileges in Tennessee by notifying Tennessee of the circuit court's error.

_____

[2]The notice of appeal does not specify the order or orders from which he appeals. The denial of his motion to quash did not result in a separate written order. However, the State does not challenge the form of the notice, and it is apparent from his brief that he contests both his conviction and, separately, the denial of his motion to quash. Furthermore, we construe notices of appeal liberally, and we may review related, underlying orders that produced the final judgment challenged on appeal. See *CitiMortgage, Inc. v. Hoeft*, 2015 IL App (1st) 150459, ¶ 8.

¶ 11    After filing his notice of appeal, Puckett filed a motion with the circuit court, asking that it state on the record its basis for denying his motion to quash, because without the court's reasoning, he was "bereft of appealable issues." The circuit court declined to hear the motion, finding that it had lost jurisdiction over the matter because of the pending appeal.

¶ 12                              ANALYSIS

¶ 13                    A. Puckett's Appellant Brief

¶ 14    The State notes that we struck Puckett's first appellant brief for failure to comply with Illinois Supreme Court Rule 341(h), and that his present brief also does not meet the rule's requirements. We agree that the brief is missing a table of contents, a statement of the issues presented for review, a statement of the applicable standard of review for each issue, citations to authority, citations to the record, and a statement of jurisdiction. Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020). We note that we have discretion to strike the brief and dismiss the appeal for failure to comply with Rule 341, and the fact that Puckett is a *pro se* litigant does not entitle him to greater leniency than we would give an attorney. See *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶¶ 77-78. Notwithstanding the deficiencies of his present brief, we elect to review the defendant's arguments.

¶ 15              B. Whether the Court Stated That Puckett Pled Guilty

¶ 16    Puckett's contention that the circuit court falsely stated that he pled guilty is not supported by the record. The portion of the trial transcript that Puckett cites for the alleged falsehood is where the court admonished him on his right to appeal pursuant to Illinois Supreme Court Rule 605 (Oct. 1, 2001), and the court never states that he pled guilty. Additionally, the financial sentencing order has checkboxes to indicate whether the defendant pled guilty or was found guilty; here, the box

4

next to "was found guilty" is checked off. Therefore, we find that the circuit court did not incorrectly state or imply that Puckett pled guilty to operating an uninsured motor vehicle.

¶ 17                    C. Denial of Puckett's Motion to Quash

¶ 18    Regarding his motion to quash, Puckett provides no authority supporting his position that the traffic citation was an administrative summons.[3] He merely states that he wanted the summons quashed because "the citation is a court summons written upon the side of the road for the convenience of the police officer summonsing (me) to an apparent administrative court." He further explains that police officers do not have the authority to summon anyone to any court, because they are not members of the judiciary, and to do so violates the principle of separation of powers. He also notes that the circuit court denied his motion without providing the basis for its decision.

¶ 19    A traffic citation is not an administrative summons, and the matter was not heard in an administrative court. Puckett provides no authority to support his separation of powers argument, or to otherwise challenge the legality of issuing a traffic citation to charge a defendant with an offense under the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2022)).

¶ 20    The Vehicle Code states that the failure to comply with a law enforcement officer's request to see proof of insurance constitutes operating an uninsured motor vehicle, a Class A misdemeanor subject to a fine in excess of $500, but not more than $1,000. *Id*. § 3-707(b), (c). The statute further provides that "no person charged with violating this Section shall be convicted if such person produces in court satisfactory evidence that at the time of the arrest the motor vehicle was covered

---

[3]This is an issue throughout his arguments on appeal. To avoid repetition, we note here and apply throughout that ' " '[t]he appellate court is not a depository in which the appellant may dump the burden of argument and research,' " and we will not formulate an argument for Puckett where he has failed to do so. *People v. Macias*, 2015 IL App (1st) 132039, ¶ 88 (quoting *In re Marriage of Auriemma*, 271 Ill. App. 3d 68, 72 (1994)).

by a liability insurance policy in accordance with Section 7-601 of this Code." *Id.* § 3-707(c). Puckett failed to provide any compelling argument at trial for why the Illinois Vehicle Code violates the principle of separation of powers, nor does he on appeal.

¶ 21   As a final note, after filing his notice of appeal, Puckett filed a motion asking the circuit court to state for the record its findings of fact and conclusions of law that it relied upon in denying the motion to quash. The court declined to consider the motion, finding that it lost jurisdiction due to the pending appeal. Puckett fails to provide any authority supporting this position that the circuit court was required to state the basis for its ruling. Additionally , we may affirm the circuit court's decision on any basis that appears in the record, whether or not the court relied upon it or whether its reasoning was correct. *Deephaven Mortgage LLC v. Jones*, 2020 IL App (1st) 191468, ¶ 32; *Banco Popular North America v. Gizynski*, 2015 IL App (1st) 142871, ¶ 37. For the reasons explained above, we find that the circuit court did not err in denying Puckett's motion to quash.

¶ 22                           D. Puckett's Failure to Obtain Counsel

¶ 23   Puckett argues that the trial court erred by denying his request for counsel, which rendered him unable to participate at the bench trial. He cites no authority supporting this argument. He also fails to make any argument explaining why or how the trial court's denial of a continuance prevented him from presenting a defense.

¶ 24   We agree with the circuit court that this matter did not implicate the sixth amendment right to counsel, nor was there any statutory right to counsel. Puckett was charged with a petty offense subject only to a monetary fine, and was not facing any possibility of imprisonment. See *City of Urbana v. Andrew N.B.*, 211 Ill. 2d 456, 469 (2004) (actual imprisonment is a different kind of penalty than fines or the mere threat of imprisonment, and this distinction is the " 'line defining the constitutional right to appointment of counsel' " (quoting *Scott v. Illinois*, 440 U.S. 367, 373

6

(1979))); 725 ILCS 5/113-3(b) (West 2022) ("In all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel.").

¶ 25    As for allowing Puckett additional time to obtain counsel, the circuit court was clear that he had had over three months to do so. Additionally, the court set the October 2, 2023, bench trial date on August 30, 2023. Even if Puckett did not start looking for counsel until he was aware of the trial date, he had ample opportunity to do so Further, he admitted that his failure to obtain counsel was due to his subjective criteria—saying he had not found anyone "capable"—and that finding an attorney "might not happen" ever.

¶ 26    Where the underlying matter was a traffic case in which neither Puckett's life nor liberty were in jeopardy, and he had over a month's notice of the trial date, we need not "exercise extreme forbearance when defendants are dilatory in seeking continuance because of lack of counsel." *People v. Sikes*, 141 Ill. App. 3d 773, 779 (1986). In *Sikes*, the defendant was charged with a traffic violation, and found guilty at a bench trial at which he was not represented by counsel. He argued that his constitutional and statutory rights were violated when he was forced to go to trial without an attorney. *Id.* at 774. The court found that, where he was charged with a petty offense subject to a fine and not imprisonment, where he had had two weeks' notice of the trial date, and where he made no showing that he had hired an attorney but needed additional time to allow them to appear, there is no violation of due process if the court denies the defendant a continuance and requires him to proceed to trial in the absence of counsel. *Id.* at 779.

¶ 27    The court noted that due process was not curtailed under the aforementioned circumstances. *Id.* We similarly find that the circuit court here did not err in declining to continue

7

the trial where Puckett made no showing that he was diligently working to acquire counsel and where he faced no possibility of imprisonment.

¶ 28                              E. Whether Tennessee Law Applied

¶ 29    Puckett's next argument is that the court erred in failing to apply Tennessee law pursuant to the doctrine of comity, as he is a Tennessee resident and Tennessee does not require drivers to show proof of insurance. He again cites no authority in support of this argument and raises it for the first time on appeal. It is therefore forfeited. See *Hebert v. Cunningham*, 2018 IL App (1st) 172135, ¶ 37.

¶ 30    Forfeiture aside, the Illinois Vehicle Code does not exempt nonresidents driving out-of-state vehicles in Illinois from the requirements of section 3-707.

¶ 31    In *People v. Wallace*, the Fourth District reviewed the history of amendments to section 3-707 of the Vehicle Code to find that it explicitly requires out-of-state vehicles driving on Illinois roads to be covered by liability insurance. 2022 IL App (4th) 210475, ¶ 60 (noting that the legislature amended subsection (a) to add "in this State" (Pub. Act 100-202 (eff. Jan. 1, 2018)) and subsection (c) to add "or under a similar law of another state" (Pub. Act 102-509 (eff. Jan. 1, 2022))). Prior to these amendments, our courts held that the statute, while broadly prohibiting operating a vehicle in Illinois without liability insurance under section 3-707(a), did not apply to vehicles registered in other states. See *id.* ¶¶ 58-59 (discussing the decision in *People v. Paddy*, 2017 IL App (2d) 160395). This was because the penalty for violating this provision only applied to operators of motor vehicles that were subject to registration under the Illinois Vehicle Code, and therefore excluded vehicles that were properly registered in other states. *Id.* ¶ 59; see also *Paddy*, 2017 IL App (2d) 160395, ¶ 40. The court concluded that, as of January 1, 2022, Illinois

8

law clearly applies its liability insurance requirement to out-of-state cars being driven in Illinois. *Wallace*, 2022 IL App (4th) 210475, ¶ 60.

¶ 32    The current version of section 3-707(c) does limit its application to motor vehicles subject to registration under either the Illinois Vehicle Code or a similar law of another state. While Tennessee law does not have a mandatory motor vehicle insurance law like Illinois's, it does have a Financial Responsibility Law, which states that, at the time of an accident requiring notice to police, "the officer shall request evidence of financial responsibility." Tenn. Code Ann. § 55-12-139(b)(1)(B) (eff. May 2, 2019). "Evidence of financial responsibility" includes, *inter alia*, documentation of an insurance policy. *Id.* § 55-12-139(b)(2)(A). It is a misdemeanor offense punishable by fine to fail to provide evidence of financial responsibility. *Id.* § 55-12-139(c)(1), (2).

¶ 33    Here, there is no evidence in the record that Puckett was in compliance with the Tennessee law of which he now wishes to avail himself. Therefore, we find that, even if Puckett had properly preserved this argument for appellate review, he has failed to establish that the trial court erred in finding him guilty of the offense of operating an uninsured vehicle pursuant to section 3-707(a) of the Illinois Vehicle Code (625 ILCS 5/3-707(a) (West 2022)).

¶ 34                                    CONCLUSION

¶ 35    For the above reasons, we find that the circuit court did not err in denying the defendant's motion to quash and finding him guilty of operating an uninsured motor vehicle. Accordingly, the judgment of the circuit court is affirmed.

¶ 36    Affirmed.